GAUDIN, Judge.
This is an appeal by Isaac Picot, convicted of forcible rape, simple burglary, crime against nature and simple robbery by a jury in the 24th Judicial District Court.
Picot and another man, Johnell Coolie, made an unauthorized entry into a woman’s residence where they raped and robbed the victim and forced her to commit acts of oral sex. The woman was tied up, blindfolded, threatened with a pistol and struck in the head to force her to reveal the whereabouts of her valuables.
The facts of this crime were stated in more detail in an opinion handed down on *772 December 16, 1985 by this Court, State of Louisiana v. Johnell Coolie, 483 So.2d 1048, wherein Coolie’s multiple convictions were affirmed.
Picot was sentenced to 30 years on the rape conviction and to lesser sentences on the other convictions, to run concurrent with the main term. The sentence further required that at least two years be served without benefit of parole, probation or suspension of sentence.
On appeal, he assigns two district court errors:
(1) The trial judge erred in denying his motion to suppress the identification of him by the victim “... because the identification procedure used was overly suggestive and could have led to misidentification,” and
(2) The trial judge erred in allowing an in-court identification of appellant’s legs because (a) this identification was tainted by the pretrial identification procedure and (b) there was no showing of an independent reason for the in-court identification.
We affirm Picot’s convictions and sentences, being of the opinion that his assignments of error are without substance. We also searched for errors patent and found none.,
The victim, although blindfolded, testified that she nonetheless had limited vision underneath the towel wrapped around her eyes. She could see, she said, the scarred legs of one of the intruders. The woman said:
“... I was able to look down, just looking downward and I saw the second person’s legs on the side of the bed and the whole time, while the first guy was raping me I was looking at the legs ... I kept looking at the legs from the beginning to the end and after the first guy raped me then the second guy.”
When the police arrived at the crime scene, the victim gave a full description of one suspect and a description of the second person’s leg scars. She testified:
“The legs ... I saw two scars close to each other and another one close to the ankle because I was looking at those scars from beginning to end. I don’t know, maybe it was the Lord helping me ... but I kept looking at those scars and it stayed in my mind from the whole time and I told the police that was all I could see of the second person because I was only able to look down.”
Picot, who lived next door to the victim and who knew her, eventually became a suspect. The crimes were committed on April 29, 1983; and less than two weeks later, on May 9, 1983, Picot consented to facial and leg photographs. The pictures were shown to the victim on May 24th, and she made a positive identification of the legs as being those of one of her attackers.
At subsequent hearings, the victim made in-court identifications of the photographs and Pieot’s legs after the district judge required appellant to roll up his trousers and exhibit his legs to the victim and to the trial jury.
ASSIGNMENT NO. 1
In this assignment of error, Picot argues that the showing of the photographs to the victim on May 24, 1983 was a one-on-one confrontation not closely associated in time to the crime. He cites State v. Maduell, 326 So.2d 820 (La.1976), and State v. Bickham, 404 So.2d 929 (La.1981), both cases involving one-on-one identifications of suspects captured very shortly after armed robberies were committed.
In Bickham, the Supreme Court of Louisiana stated:
“One-on-one confrontations between a suspect and a victim, while not favored by the law, are permissible when justified by the overall circumstances. State v. Dunbar, 356 So.2d 956 (La.1978). Such identification procedures are generally permitted when the accused is apprehended within a short time after the offense and is returned to the scene of the crime for on-the-spot identification. A prompt in-the-field identification, under appropriate circumstances, promotes ac *773 curacy, as well as expediting the release of innocent suspects.”
In the instant case, the State points out that the victim was asked only if she recognized distinctively scarred legs as shown in the photographs. The victim was not identifying a person, only a piece of evidence much as an armed robbery victim could be asked to identify an abandoned weapon found nearby.
Picot’s situation is unlike the classic one-on-one confrontation cases where courts normally apply a totality of circumstances test. However, applying such a test, as the United States Supreme Court did in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and as the Supreme Court of Louisiana did in State v. Dauzat, 364 So.2d 1000 (La.1978), and in other cases, we find that the identification method was not impermissibly suggestive and that the procedure did not give rise to a substantial likelihood of misidentification. We are impressed, as no doubt was the jury, by the fact that for a sufficient period of time the victim’s attention was keenly focused on two uniquely scarred legs. These scars were described in minute detail to the investigating police officers. The scars on Picot’s legs, two on the rear of his left leg and one above the right ankle, are identical to the given description.
Also, there is the victim’s very firm and apparently convincing testimony regarding the identification. She said: “I will never forget those scars.”
In Manson v. Brathwaite, supra, five factors are set forth for use in determining the reliability of identifications. They are:
(1) The opportunity to view,
(2) The degree of attention,
(3) The accuracy of the description,
(4) The witness’ level of certainty and
(5) The time between the crime and the confrontation.
Picot’s victim easily passes tests (1) thru (4). The record indicates that the victim, from the time the investigating officers arrived at her apartment until she identified Picot’s legs during the trial, gave straightforward and unemotional statements and/or testimony. Only the time element, 25 days from the date of the crimes to the day of the photographic confrontation, can be used as an argument against the victim’s reliability. Obviously, the jury did not believe that the passage of 25 days was enough to dim the victim’s recollection of Picot’s uncommonly scarred legs, nor do we.
Appellant does not contend that the blindfold prevented the victim from seeing Picot’s legs. Her testimony in this regard, that she could see, was unchallenged.
If, considering all circumstances, there was not a substantial likelihood of irreparable misidentification, then the evidence, i.e., the identification of Picot’s legs, is a matter for the trial judge to weigh. As stated in Manson v. Brathwaite, supra:
“We (the members of the United States Supreme Court) are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.”
Even if an identification is suggestive, it will not result in the reversal of a conviction if it is demonstrated that the identification was reliable. See Manson v. Brathwaite, supra; also, State v. Guillot, 353 So.2d 1005 (La.1977), and State v. Dryer, 449 So.2d 620 (La.App. 1st Cir.1984).
Here, not only was the identification devoid of suggestion, it was demonstrated to the trial judge and to the jury that the identification was reliable.
Finally, regarding this assignment of error, we note that Picot neither questions the legality of the police investigation that produced him as a suspect nor does he say that he was coerced or pressured into allowing the photographs to be taken. He claims, instead, the identification procedure was overly suggestive and that 25 days was too long a period of time between the *774 cnmes and the showing of Picot’s photographed legs to the victim. We find nothing in this record or in the jurisprudence to sustain such contentions.
ASSIGNMENT NO. 2
During the trial, the prosecuting attorney secured the district judge’s permission to have Picot display his legs to the victim and, at the same time, to the jury. The victim recognized the scars. Picot contends this in-court identification was tainted by an illegal pretrial identification and that the State made no showing of an independent reason for the in-court identification. The validity of this assignment of error depends considerably on the correctness of the first assignment, and we have already ruled that the pretrial identification of the photograph of Picot's legs was neither improperly suggestive nor likely to have resulted in a misidentification.
In addition, there were independent justifications for the in-court identification. The victim had the opportunity to see the scarred legs while she was being assaulted by the other rapist and she had calmly and meticulously described the leg scars to police officers just after the crimes had been committed. Louisiana courts have uniformly held that requiring a defendant to exhibit an unusual physical characteristic as a scar is demonstrative rather than testimonial and does not violate self-incrimination constitutional rights.
In State v. Anthony, 332 So.2d 214 (La.1976), the Court proclaimed:
“It is settled that the privilege against self-incrimination protects an accused only from being compelled to testify against himself, or from otherwise providing the state with evidence of a testimonial or communicative nature. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The privilege does not mandate an exclusion of the accused’s body as evidence when it may be material. State v. Wilson and Francis, 329 So.2d 680 (La.1976). The instant case is virtually indistinguishable from State v. Junius, 257 La. 331, 242 So.2d 533 (1971), where we held that the accused’s privilege against self-incrimination was not offended when he was compelled to exhibit an identifying scar to a witness at trial, and from Wilson and Francis, supra, where we upheld the state’s right to compel the accused to expose an identifying tatoo on his arm. Similarly, the trial judge in this case did not commit error when he required defendant to expose the identifying scar on his chest.”
The identity of the scarred assailant was a key issue during the trial. The in-court identification of Picot’s legs was legal demonstrative evidence properly submitted to the jury for its consideration, along with all the other evidence for and against Picot’s interests.
Picot was fairly tried and we affirm his conviction.
AFFIRMED.